**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION**

| | | |
|---|---|---|
| STELLA ANDREWS, individually and On behalf of similarly situated Persons, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CASE NO.: 1:10-CV-257 COLLECTIVE ACTION |
| AMERICA'S LIVING CENTERS, LLC, A FOR PROFIT LIMITED LIABILITY CORPORATION, ORGANIZED UNDER THE LAWS OF THE STATE OF NORTH CAROLINA; | ) ) ) ) ) ) | |
| AND | ) ) | |
| AMERICA'S LIVING CENTERS, LLC, D/B/A CAROLINA LIVING CENTER; | ) ) ) | |
| AND | ) ) | |
| AMERICA'S LIVING CENTERS, LLC, D/B/A CAROLINA LIVING CENTER #1; | ) ) ) | |
| AND | ) ) | |
| AMERICA'S LIVING CENTERS, LLC, D/B/A ZION HILL LIVING CENTER; | ) ) ) | |
| AND | ) ) | |
| AMERICA'S LIVING CENTERS, LLC, D/B/A GOLDEN HARVEST LIVING CENTER #1; | ) ) ) ) | |
| AND | ) ) | |
| AMERICA'S LIVING CENTERS, LLC, D/B/A GOLDEN HARVEST LIVING CENTER #2; | ) ) ) | |

AND                                    )
                                       )
                                       )
AMERICA'S LIVING CENTERS, LLC,         )
D/B/A UNION MILLS LIVING               )
CENTER #1;                             )
                                       )
AND                                    )
                                       )
AMERICA'S LIVING CENTERS, LLC,         )
D/B/A UNION MILLS LIVING               )
CENTER #2;                             )
                                       )
AND                                    )
                                       )
AMERICA'S LIVING CENTERS, LLC,         )
D/B/A UNION MILLS LIVING               )
CENTER #3;                             )
                                       )
AND                                    )
                                       )
AMERICA'S LIVING CENTERS, LLC,         )
D/B/A FOUR SEASONS FAMILY              )
CARE HOME;                             )
                                       )
AND                                    )
                                       )
AMERICA'S LIVING CENTERS, LLC,         )
D/B/A TRANSYLVANIA LIVING              )
CENTER;                                )
                                       )
AND                                    )
                                       )
KENNETH HODGES, INDIVIDUALLY           )
AND   AS MEMBER/MANAGER OF             )
AMERICA'S LIVING CENTERS, LLC,         )
AND OWNER AND/OR MANAGER OF            )
CAROLINA LIVING CENTERS;               )
CAROLINA LIVING CENTER #1;             )
GOLDEN HARVEST LIVING CENTER           )
#1; GOLDEN HARVEST LIVING              )
CENTER #2; UNION MILLS LIVING          )
CENTER #1; UNION MILLS LIVING          )
CENTER #2; UNION MILLS LIVING          )
CENTER #3; FOUR SEASONS                )
FAMILY CARE HOME; AND                  )

TRANSYLVANIA LIVING CENTER;    )
                               )
            DEFENDANTS.        )
_____)

## COLLECTIVE ACTION COMPLAINT

Plaintiff Stella Andrews ("Andrews") complains of defendants as follows:

## GENERAL ALLEGATIONS

1.    This is an action to recover unpaid federally mandated minimum wages and overtime wages due to a class of past and present employees of defendants as a result of the members of the class being improperly classified as independent contractors and not being paid for all hours while on duty at defendants' facilities.

2.    Plaintiff's claim for unpaid minimum wages and overtime wages is brought pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA").

## JURISDICTION AND VENUE

3.    This court has original jurisdiction to adjudicate the claims stated herein under federal law pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

4.    Venue is proper in the United States District Court for the Western District of North Carolina pursuant to 28 U.S.C. § 1391 as a substantial part of the events giving rise to the claim occurred in this district.  All defendants are located in the State of North Carolina, with either their physical business location or registered office being located in this district.

## PARTIES

5.    Andrews is currently a citizen and resident of the State of Kansas. However, at all times relevant to this action, she was a resident of Brevard,

Transylvania County, North Carolina, where she was employed by defendant Kenneth Hodges ("Hodges") and/or American's Living Centers, LLC ("ALC").

6.      Plaintiff was employed from January 15, 2007 to June 30, 2009.

7.      ALC was and is a North Carolina limited liability corporation, with its principal office at 495 Zion Hill Road, Marion, North Carolina 28752.

8.      ALC and/or Hodges own and/or operate all of the family care homes listed below who are d/b/a entities of ALC and/or Hodges.

9.      Carolina Living Center is a business not registered with the Secretary of State and operating in the State of North Carolina.

10.     Carolina Living Center's physical address is 1310 Hebron Street, Hendersonville, North Carolina, 28739.

11.     On information and belief, Carolina Living Center is wholly owned and operated by defendant ALC and/or Hodges.

12.     Carolina Living Center #1 is a business not registered with the Secretary of State and operating in the State of North Carolina.

13.     Carolina Living Center #1's physical address is 1308 Hebron Street, Hendersonville, North Carolina, 28739.

14.     On information and belief, Carolina Living Center #1 is wholly owned and operated by defendant ALC and/or Hodges.

15.     Golden Harvest Living Center #1 is a business not registered with the Secretary of State and operating in the State of North Carolina.

16.     Golden Harvest Living Center #1's physical address if 128 Country Meadows Lane, Forest City, North Carolina, 68043.

4

17.    On information and belief, Golden Harvest Living Center #1 is wholly owned and operated by defendant ALC and/or Hodges.

18.    Golden Harvest Living Center #2 is a business not registered with the Secretary of State and operating in the State of North Carolina.

19.    Golden Harvest Living Center #2's physical address is 133 Country Meadows Lane, Forest City, North Carolina, 28043.

20.    On information and belief, Golden Harvest Living Center #2 is wholly owned and operated by defendant ALC and/or Hodges.

21.    Union Mills Living Center #1 is a business not registered with the Secretary of State and operating in the State of North Carolina.

22.    Union Mills Living Center #1's physical address is 6480 Hudlow Road, Union Mills, North Carolina, 28167.

23.    On information and belief, Union Mills Living Center #1 is wholly owned and operated by defendant ALC and/or Hodges.

24.    Union Mills Living Center #2 is a business not registered with the Secretary of State and operating in the State of North Carolina.

25.    Union Mills Living Center #2's physical address is 6474 Hudlow Road, Union Mills, North Carolina, 28167.

26.    On information and belief, Union Mills Living Center #2 is wholly owned and operated by defendant ALC and/or Hodges.

27.    Union Mills Living Center #3 is a business not registered with the Secretary of State and operating in the State of North Carolina.

5

28.     Union Mills Living Center #3's physical address is 6470 Hudlow Road, Union Mills, North Carolina, 28167.

29.     On information and belief, Union Mills Living Center #3 is wholly owned and operated by defendant ALC and/or Hodges.

30.     Four Seasons Family Care Home is a business not registered with the Secretary of State and operating in the State of North Carolina.

31.     Four Seasons Family Care Home's physical address is 25 Little Bend Lane, Brevard, North Carolina, 28172.

32.     On information and belief, Four Seasons Family Care Home is wholly owned and operated by defendant ALC and/or Hodges.

33.     Transylvania Living Center is a business not registered with the Secretary of State and operating in the State of North Carolina.

34.     Transylvania Living Center's physical address is 32 Oakdale Street, Brevard, North Carolina, 28172.

35.     On information and belief, Transylvania Living Center is wholly owned and operated by defendant ALC and/or Hodges.

36.     Upon information and belief, Hodges is a citizen and resident of McDowell County, North Carolina.

37.     According to filings with the North Carolina Secretary of State, Hodges is the sole Member/Manager of America's Living Centers LLC.

38.     "Hodges/America's Living Centers, LLC" are listed by the North Carolina Department of Health and Human Services as the parties that own all the separate unregistered family care homes.

## FEDERAL COLLECTIVE ACTION ALLEGATIONS

39. Andrews brings her federal law claim under the FLSA as a collective action on behalf of herself and all other similarly situated employees, pursuant to 29 U.S.C. § 216(b).

40. All members of the proposed collective action are former and current employees who were/are employed by defendants at various family care homes throughout North Carolina that are owned and operated by ALC and/or Hodges.

41. Members of the proposed collective class were not paid minimum wages as required by 29 U.S.C. § 206 for all hours worked and overtime wages for hours worked in excess of forty (40) during a seven (7) day period as required by 29 U.S.C. § 207.

42. Upon information and belief, Hodges, ALC and the network of "assisted living centers," "group homes," "family care homes" and other facilities owned and operated by Hodges, constitute an enterprise for purposes of jurisdiction under the FLSA and that the collective gross revenue of these facilities exceeds $500,000 annually.

## STATEMENT OF CLAIM

43. Defendants own, operate and/or maintain business operations in what is defined as a "family care home" and set forth in N.C.G.S.A. § 131D-2.1(9).

44. North Carolina statute § 131D-2.1(9) defines "family care home" as:

> An adult care home [as defined by N.C.G.S. § 131D-2.1(3)-(5)] having two to six residents. The structure of a family care home may be no more than two stories high, and none of the aged or physically disabled persons being served there may be housed in the upper story without provision for two direct exterior ground-level accesses to the upper story.

7

45.     The individual Family Care Homes possess the following licenses, issued by the State of North Carolina, Department of Health and Human Services . Division of Health Service Regulation:

> Carolina Living Center .  FCL-045-007
>
> Carolina Living Center #1 .  FCL-045-026
>
> Golden Harvest Living Center #1 .  FCL-081-036
>
> Golden Harvest Living Center #2 .  FCL-081-037
>
> Union Mills Living Center #1 .  FCL-081-033
>
> Union Mills Living Center #2 .  FCL-081-034
>
> Union Mills Living Center #3 .  FCL-081-035
>
> Four Seasons Family Care Home .  FCL-088-004
>
> Transylvania Living Center .  FCL-088-003

46.     The individual Family Care Homes are licensed to house the following numbers of individuals as issued by the State of North Carolina, Department of Health and Human Services . Division of Health Service Regulation:

> Carolina Living Center .  six (6)
>
> Carolina Living Center #1 .  six (6)
>
> Golden Harvest Living Center #1 .  six (6)
>
> Golden Harvest Living Center #2 .  five (5)
>
> Union Mills Living Center #1 .  six (6)
>
> Union Mills Living Center #2 .  six (6)
>
> Union Mills Living Center #3 .  six (6)
>
> Four Seasons Family Care Home .  six (6)

Transylvania Living Center .  six (6)

47.    In its annual report to the Secretary of State for the State of North Carolina, filed on October 25, 2005, ALC lists that it is involved in the "Operation of Assisted Living Centers."

48.    These "assisted living centers"[1] are residential type care facilities for adults who are frail due to age, or who suffer from physical or mental infirmities, are unable to live by themselves in any type of setting due their need for care and/or monitoring.

49.    Assisted living centers are widely regarded as the least controlling and lowest level of assisted type of health care available for persons in need of such services.  More intense types of facilities are those such as nursing homes.

50.    The residents/clients come to reside at the defendants assisted living centers through self or family referral/request, state referral and/or physician referral.

51.    While residing at the assisted living facility, residents/clients are under the continuous oversight or monitoring of the staff assigned to the facility, such as plaintiff.

52.    The level of supervision or assistance plaintiff afforded each resident/client varies depending on the abilities or disabilities of the individual resident/client.

53.    Such supervision or assistance could vary as greatly from resident to resident and could be as little assistance as plaintiff just being aware that the resident/client was in the facility, to a higher level of assistance such as helping the person eat or take care of themselves in performing daily functions, such as dressing, walking, cleaning and receiving medication.

---

[1]  Assisted living center(s) and Family Care Home will be used interchangeably and should be regarded as being one in the same unless specifically noted.

54.     On information and belief, the corporate defendants carry on their business operations in homes that were either built specifically for the purpose of housing an assisted living center, or a residence that was remodeled or reconfigured to house multiple individuals.

55.     Such homes or facilities are generally located in residential neighborhoods, where code allows.

56.     The physical building or facilities, such as those described above, may or may not be owned by any defendant.

57.     To plaintiff's knowledge, defendant did not conduct business in any residence that was directly owned by the resident/client living at that same address.

58.     Defendant Hodges, who is listed as sole Member/Manager of ALC, is believed to be the sole owner or shareholder of all corporate defendants and the person with final authority for the operations, for any defendant.

59.     Many times plaintiff would be required to deal with Hodges directly on matters that required a management level decision.

60.     Hodges personally signed many of the checks issued to plaintiff for payroll, expenses that she incurred when she was required to purchase household goods for the facility and/or reimbursement to plaintiff for the payment of utility bills that plaintiff paid out of her account on the promise that she would be reimbursed for such expense.  She never received a check from ALC or any of the unregistered entities. The checks signed by Hodges were written from an account under the name of "Hodges & Associates."

61.     To the best of plaintiff's knowledge, all personnel decisions were those of Hodges.

62.     All corporate or d/b/a defendants are utterly and completely dependent on Hodges personal management and ownership for their operation.

63.     To the best of plaintiff's knowledge, there is no board of directors or other type of governing committee of any corporate or d/b/a entity.  Hodges answers to no one for the decisions he makes and only a very few employees would qualify as exempt managers.  However, no employees, regardless of status, have any authority equal to or greater than Hodges.

64.     As part of their day-to-day operations, the facilities owned by Hodges consume such items that were transported through interstate commerce.  These would include, but not be limited to:

        A.      Food for the resident/clients;

        B.      Air conditioning, plumbing, electrical and heating equipment and/or replacement parts;

        C.      Medications; and

        D.  Other goods and materials that traveled through interstate commerce.

65.     To the best knowledge available, no defendant conducts any business other than operating an assisted living center or other similar type of facility.

66.     Upon information and belief, defendants' combined annual gross sales, volume or income exceeds $500,000.

67.     The assisted living centers operated by the defendants constitute a health care facility and thus are an "enterprise" as defined by 29 U.S.C. § 203(s)(1)(B).

68.     29 U.S.C. 203(s)(1)(B) defines "enterprise engaged in commerce or in the production of goods for commerce" as "the operation of a hospital, an institution engaged in the care of the sick, the aged, or the mentally ill or defective who reside on the premises of such institution . . . (regardless of whether or not such hospital, institution or school is public or private or operated for profit or not for profit)"

69.     Since defendants operate and maintain facilities that are engaged in the care of the "aged, or the mentally ill" and such persons "reside on the premises of such institution" defendants fall under the jurisdiction of the FLSA.

70.     Defendants operations also constitute an "enterprise engaged in commerce or in the production of good for commerce pursuant to 29 U.S.C. § 203(s)(1)(A)(i) and (ii) because the individual facilities, homes or residences have employees and/or residents who have handled and consumed goods or materials that have been moved in or produced for interstate commerce.

71.     If the individual homes, residences or facilities do not reach the $500,000 annual revenue threshold, the revenue from all homes will be combined to achieve the threshold.

72.     The combination of all revenue and all operations from the individual facilities constitute a "unified operation" of the businesses,  and  all corporate defendants share the  same business purpose.  As such, these entities are employers as defined in 29 U.S.C. § 203.

73.     Hodges is, also, personally an employer as defined by 29 U.S.C. 203(d).

74.     Hodges is the ultimate authority for all the corporate defendants.

75.     Hodges personally held and exercised all employment power and control over plaintiff and other workers employed by him and the corporate defendants, including but not limited to the direct power to hire and fire such employees and to direct all employment related actions by the employees.

76.     Hodges is the only manager, member or owner listed for any corporate entity involved in this litigation, and to the best of plaintiff's knowledge, Hodges owns 100% of all stock or ownership interest in all corporate defendants and d/b/a entities.

77.     Hodges has and does exercise all control over the significant functions of the corporate defendants, including but not limited to all compensation decisions and corporate policy decisions alleged herein.

78.     Hodges thus either personally made the decisions about the conduct of the business that resulted in or contributed to the violations of the FLSA alleged herein or exercised final review and approval power over such decisions.

79.     In making all such decisions Hodges acted directly in the interests of the corporate employers.

80.     Plaintiff was employed at defendants' Transylvania Living Center location.

81.     Plaintiff's job title was "Supervisor in Charge."

82.     Plaintiff's job duties included, but were not limited to:

   A.     Administrative duties of keeping track of the expenses of the home to which she was assigned;

   B.     Paying bills when cut off notices were received in the mail for the home to which she was assigned;

   C.     Purchasing groceries and household supplies for the home;

   D.     Notifying ALC of the need for maintenance at the home to which she was assigned;

E.   Assisting with the intake of new clients;

F.   Preparing meals for those clients residing at the home to which she was assigned;

G.   Performing housekeeping duties in the home to which she was assigned;

H.   Doing laundry for the clients assigned to her care;

I.   Preparing medications (four or more times a day) for the clients assigned to her;

J.   Distributing such medication;

K.   Tracking the inventory of such medication;

L.   Maintaining records of the distribution of each client's medication;

M.   Contacting the appropriate pharmacy or physician to insure an adequate supply of medication was on hand for each client;

N.   Transporting clients to physician appointments and/or social functions when transportation was not available from ALC and

O.   Coordination of clients' doctor and all service providers' appointments.

83.   During her tenure with defendants, plaintiff was classified and paid as an independent contractor.

84.   Due to being classified as an independent contractor, plaintiff was not subjected to federal or state (if applicable) income tax withholding, deductions for Medicare or Social Security tax.

85.	Due to plaintiff being classified as an independent contractor, plaintiff was also liable for the employer's portion of social security tax withholding, thus further reducing her net income by over seven percent.

86.	During her employment with defendants, plaintiff was required to reside at the facility in which she was working.

87.	Because she was required to reside at the facility in which she worked, plaintiff was on-duty twenty-four hours a day, seven days a week.

88.	If plaintiff was required to be absent from the facility, she was required to obtain a substitute or replacement caretaker to fill in for her.

89.	When she was required to be absent from the facility and obtain a substitute, plaintiff was required to pay such individual out of her own income.

90.	During her employment, plaintiff was paid a straight salary of between $500 and $600 a week.

91.	Despite plaintiff's job title, her primary duties were not involved in the management of the enterprise or the facility.

92.	Plaintiff's job duties were defined in writing and  the day-to-day operation of the facility were contained in a manual maintained on the premises.

93.	Plaintiff did not possess authority, real or apparent, to commit or create any binding type of contract between defendants and any third party.

94.	Plaintiff did not supervise or direct the work of two or more employees.

95.	Plaintiff did not possess the authority, real or apparent, to hire or fire employees, nor were her suggestions, comments or recommendations given any weight to such decisions.

96.     Plaintiff's work consisted mainly of manual labor in the maintaining and cleaning the facility, cooking meals, washing clothes, bedding and other laundry for the residents/clients and assisting the residents/clients as their physical or mental conditions required.

97.     The degree of discretion or independent judgment exercised by plaintiff was very limited and most contingencies were addressed in the manual maintained on the premises.

98.     Deviation from the procedures or directions in the manual carried the threat of disciplinary action from defendants.

99.     29 C.F.R. § 541.2 states that "[a] job title is insufficient to establish the exempt status of an employee.  The exempt or nonexempt status of any particular employee must be determined on the basis of whether the employee's salary and duties meet the requirements of the regulations in this part."

100.     Plaintiff's job duties do not constitute a valid exemption under 29 U.S.C. § 213(a)(1) from the overtime and minimum wage requirements of 29 U.S.C. § 206 and 29 U.S.C. § 207 for executive employees as set forth in 29 C.F.R. § 541.100, *et seq.*

101.     Plaintiff did not perform any of the "management" activities generally associated with and defined in 29 C.F.R. § 541.102.

102.     Plaintiff's job duties do not constitute a valid exemption under 29 U.S.C. § 213(a)(1) from the minimum wage and overtime requirements of 29 U.S.C. § 206 and 29 U.S.C. § 207 for administrative employees as set forth in 29 C.F.R. § 541.200, *et seq.*

103.   Plaintiff did not perform any duty or functions that would be considered to be "directly related to the management or general business operations of the employer or the employer's customers" as stated in 29 C.F.R. §§ 541.201(a), (b).

104.   Plaintiff estimates that she spent between thirty (30%) and fifty (50%) of her time per week on domestic duties such as cooking, cleaning, laundry, transporting residents/clients and administering medications.

105.   29 C.F.R. § 552.6 limits the amount of time a person may perform "domestic" duties, such as household work, bed making, cooking, cleaning, laundry and other similar services to twenty (20%) of the total weekly hours worked to qualify for the exemption listed in 29 U.S.C. § 213(a)(15).

106.   Plaintiff is not considered a domestic employee because:

    A.   Plaintiff was not employed in or at a private household which was owned by one or all of the residents and

    B.   The facility in which plaintiff was employed was a commercial, for profit, facility.

107.   While employed by defendants, no agreement existed between plaintiff and any defendant, or agent/manager for defendants, regarding her meal, sleep or rest periods.

108.   During her employment with defendants, plaintiff was regularly awakened during the night to administer medications to residents/clients who required such services.

109.   During her employment with defendants, plaintiff was awakened on a frequent basis when residents/clients would attempt to leave the facility without

authority. Often times the residents/clients would attempt to sneak out of the facility to smoke or wonder off due to medical/mental conditions.

110. No agreement, express or implied, existed between plaintiff and any defendant or its agents regarding sleep or rest, as to the agreed upon period or duration of such rest periods as required since plaintiff was residing at defendants'facility and/or on duty for more than 24 hours.

111. Due to the requirement that plaintiff administer medication and the interruptions of residents/clients attempting to leave the premises, among other things, it was rare if ever that plaintiff received at least five (5) uninterrupted hours of sleep in any night.

112. 29 C.F.R. § 785.22 states that if an employee "cannot get at least 5 hours' sleep during the scheduled period the entire time is working time."

113. During her employment, plaintiff was paid a straight salary, regardless of how profitable Hodges and/or the corporate defendants were.

114. During her employment, plaintiff was misclassified as an independent contractor.

115. At the end of the year, plaintiff was not provided a IRS Form 1099 from defendants and when inquiry was made as to such form, she was informed that she could produce her own 1099.

116. Plaintiff alleges that she was misclassified as an independent contractor because:

> A. Defendants maintained almost total control over her job duties and the execution of such duties.

i. All of plaintiff's duties and responsibilities were set forth in great detail in a manual maintained at the facility.

B. Plaintiff was paid a straight salary, regardless how much money the defendants made or how much profit was generated or how many hours she worked or was on duty.

C. Plaintiff had no investment in equipment, material, nor could she employ any other person, except for a casual replacement when she was required to be absent.

D. The degree of skill required to perform plaintiff's job was not great.

E. As an at-will employee, plaintiff could have been terminated at any time for any reason, no reason or the wrong reason. Plaintiff just could not have been terminated for an illegal reason, such as filing a complaint to the U.S. Department of Labor due to the classification of her employment as an independent contractor by defendants.

F. Plaintiff's services rendered to the residents/clients of defendants facilities, was integral and indispensable to the accomplishment of, or meeting the business objectives of, the defendants.

117. The FLSA, 29 U.S.C. § 206, requires that covered employees be paid at least the statutory minimum wage for all hours worked.

118. Since defendants paid plaintiff between $500 and $600 per week and that plaintiff generally worked around 168 hours in a week, defendants are liable to plaintiff for the difference between what she was paid and minimum wage for such hours.

119. The FLSA, 29 U.S.C. § 207, requires that non-exempt employees be paid at a rate of at least time plus one half of their regular rate of pay for all hours worked over 40 in any consecutive week or seven day period.

120. "Regular rate" is defined in 29 C.F.R. § 778.109 as the total remuneration for employment (except statutory exclusions) in any workweek, divided by the total number of hours worked by the employee in the same workweek.

121. Since plaintiff's regular rate of pay would be below minimum wage, for the purpose of determined overtime compensation, defendant is liable for the difference between what was paid and the following:

   A. For the first 40 hours, the difference between minimum wage for the applicable time period and plaintiff's regular rate.

   B. For all hours over 40, the difference between the statutory minimum wage at time plus one-half, and the wages paid at the regular rate of the remaining hours over 40 worked.

122. In previous years, other care type facilities owned by defendants have been cited by the U.S. Department of Labor for violations of the FLSA's overtime requirements at 29 U.S.C. § 207.

123. On November 25, 2008, Hodges, as owner of Willow Ridge Assisted Living, LLC, was sent a letter from the U.S. Department of Labor's Wage and Hour Division ("DOL") concerning investigation number 1515402, obtained by plaintiffs' counsel as part of a Freedom of Information Act request.

124. In the letter referred to above, the DOL informed Hodges that Willow Ridge was found to be in violation of 29 U.S.C. § 207 and that the letter confirms Hodges agreed to pay an amount due as unpaid overtime.

125. The DOL found Willow Ridge Assisted Living to be a covered entity under 29 U.S.C. § 203(s)(1)(B).

126. Later in 2009, Reynolds House, LLC, with the legal name of America's Living Centers, was cited for the period, March 11, 2007 through March 7, 2009.

127. As a result of this investigation, the DOL noted the following:

> FUTURE COVERAGE: Mr. Hodges agreed to have all the homes that he owns and listed under Americas Living Centers in compliance with the FLSA. He signed an agreement to future compliance (which is located behind the Back Wage Disbursement and Pay Evidence Instructions letter in the file) which states the following:
>
> I, the undersigned, certify that I have read the "Guide to the Fair Labor Standards Act" and my business is presently in full compliance with all applicable provisions of the FLSA.
>
> I further certify that I will maintain adequate and accurate records for all employees subject to the record keeping requirements contained in FLSA section 11(c) and Title 29, United States Federal Regulations, Part 516.
>
> I also certify that I will compensate all of my employees subject to the minimum wage provision at rate of pay no less than the minimum rate applicable under the FLSA.
>
> I certify that I will compensate my employees subject to the overtime provisions at rates not less than one and one-half times the regular rate of pay for all time worked in excess of 40 hours in any oneworkweek (*sic*).
>
> I further certify that I will employ no individual under the legal minimum age for employment, and that I will observe all hours, times, and occupations restrictions with regard to the employment of minors under the age of 19 years.
>
> I also understand that may future violation of the child labor, minimum wage, and/or overtime provisions of the FLSA may result in the assessment of civil money penalties against me and/or the firm.

128. Plaintiff and the proposed collective class are, also, eligible to have the statute of limitations expanded from two to three years.

129. The Portal-To-Portal Act, 29 U.S.C. § 255(a) provides that for an employer who willfully violates the FLSA, the statute of limitations shall be expanded to three years.

130.    Defendants and/or Hodges were placed on notice that their actions violated the law as evidence by the DOL two separate citations.

131.    Plaintiffs are also eligible for liquidated damages pursuant to 29 U.S.C. § 216(b), in an amount up to and equal to the unpaid wages due to defendants violations of the FLSA at 29 U.S.C. § 206 for not paying the required statutory minimum wage and 29 U.S.C. § 207 as a result of defendants not paying overtime as required by the FLSA.

132.    If plaintiffs are not found to be eligible for liquidated damages, plaintiffs are entitled to prejudgment interest.

133.    29 U.S.C. § 213 exempts certain categories of employees from the requirements of overtime compensation contained in Section 207.

134.    None of the FLSA exemptions apply to plaintiff, or the other similarly situated employees.

135.    Upon information and belief, the practice of classifying plaintiff and other similarly situated individuals as independent contractors, not properly deducting wages for taxes and other required withholding, not properly paying overtime for all hours worked in excess of 40 hours in a week under 29 U.S.C. § 207 and not paying federally mandated minimum wage pursuant to 29 U.S.C. § 206 is an enterprise wide and on-going practice.

## **PRAYER FOR RELIEF**

WHEREFORE, plaintiff, and all similarly situated current and former employees of defendants, request:

A.    That Notice be issued pursuant to 29 U.S.C. § 216(b) as soon as possible to all former and current employees employed by any

defendant for a period of three (3) years immediately preceding this action and that such additional former or current employees be allowed to join this action. This notice should inform the class members that this action has been filed, describe the nature of the action and explain their right to opt-in to this action if they have not been compensated for their hours worked at a rate of at least the statutory minimum wage for the period of time they worked for defendants and overtime compensation for hours work in excess of forty (40) hours in a week, at the rate of one and one-half (1½) times their regular rate of pay during the statutory period;

B.     That judgment be entered against defendants for their willful failure to pay statutory minimum wages and overtime wages at one and one-half (1½) times the regular rate of pay for plaintiff, and that plaintiff and similarly situated opt-in plaintiffs be awarded an amount equal to, and in addition to the amount of unpaid wages and overtime due for liquidated damages that are a result of defendants' willful refusal to pay required wages and overtime wages;

C.     That plaintiff and all similarly situated individuals have and recover reasonable attorneys' fees as may be allowed by law;

D.     That the costs of this action be taxed against defendants;

E.     That all issues of fact be tried before a jury;

F.    That additional plaintiffs be allowed to opt-in and to join this cause of action; and,

G.    That plaintiffs be awarded such other and further relief as the Court may deem just and proper.

This the 3rd day of November, 2010.

<div style="margin-left:50%">

THE JOHN C. HUNTER LAW FIRM PLLC

s/John C. Hunter
John C. Hunter
NC Bar No.: 13197
One Pack Square, Suite 418
Asheville, N. Carolina 28801
Telephone: 828-281-1940
Fax: 828-281-9069
e-mail: johnhunter@jchlawfirm.com

</div>